IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DUANE L. SMITH,**

        Petitioner,

v.                                                **Civil Action No. 3:07cv156**
                                                        **(Judge Bailey)**

**JOE D. DRIVER, Warden,**

        Respondent.

## OPINION/REPORT AND RECOMMENDATION

### I. Factual and Procedural History

The *pro se* petitioner initiated this case on November 30, 2007, by filing a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. In the petition, the petitioner seeks community confinement center ("CCC") review without regard for the Bureau of Prisons ("BOP") 10% policy found at 28 C.F.R. §§ 570.20 and 570.21, and immediate release to a halfway house.

On January 18, 2008, the petitioner paid the required $5.00 filing fee. Accordingly, on January 29, 2008, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to file an answer to the petition.

The respondent filed a Motion to Dismiss on February 27, 2008. Consequently, a Roseboro Notice was issued on February 28, 2008.

On March 13, 2008, the petitioner filed his response to the respondent's motion.

This case is before the undersigned for a report and recommendation pursuant to LR PL P

83.09, et seq.

## II. The Petitioner's Conviction and Sentence

According to the parties, on June 21, 2007, the petitioner was sentenced in the United States District Court for the Eastern District of Virginia to 24 months for a violation of supervised release. The petitioner was subsequently designated to the Hazelton Penitentiary in Bruceton Mills, West Virginia, to serve his term of imprisonment.

## III. Petitioners' CCC Review

When the petitioner came within 11 to 13 months of his release date, his case file was reviewed for CCC eligibility and placement. Upon such review, staff determined that the petitioner is not eligible for CCC placement because his willingness to violate the terms of supervised release, and inability to function properly in society, show that he is a risk to the community. Thus, the petitioner was not recommended for CCC placement and the BOP's 10% policy was not applied.

## IV. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment spends a reasonable part,
> not to exceed six months, of the last 10 per centum of the term to be
> served under conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's re-entry into
> the community. The authority provided by this subsection may be
> used to place a prisoner in home confinement. The United States
> Probation System shall, to the extent practicable, offer assistance

to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## V. Analysis

Although the petitioner asserts that he is challenging the BOP's use of the 10% policy, it is clear that the 10% policy was not applied to him. Instead, the petitioner seemingly challenges the fact that he was deemed ineligible for any CCC placement at all. Thus, the undersigned will review the petitioner's claims as a challenge to the BOP's determination that he is ineligible for CCC placement.

### A. Exhaustion of Administrative Remedies

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes,

4

2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

This case is a good example of why the exhaustion of administrative remedies is applied to habeas corpus proceedings. Had the petitioner filed administrative remedies, the BOP could have developed the factual basis for denying the petitioner CCC placement in more detail. In addition, the BOP would have had the opportunity to exercise its discretion and apply its expertise. Moreover, it is not clear that exhaustion in this case would have been futile. Rather, exhaustion would have provided the BOP the opportunity to discover and correct its own errors, if any.

5

Accordingly, the undersigned finds that the exhaustion of administrative remedies should not be waived and that the petition should be dismissed for that reason. However, even assuming that exhaustion would have been futile, and should be waived, this case is due to be dismissed on the merits.

**B.  Petitioner's Denial of CCC Placement**

As noted previously, 18 U.S.C. § 3624(c) provides:

> The Bureau of Prisons shall, *to the extent practicable*, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, or the last 10 percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

Such discretionary decisions are within the province of prison administrators and the Court should not intervene unless there is clear evidence of unconstitutional conduct. See Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974). Moreover, it is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983).

Because the petitioner has no protected liberty interest in being placed in a CCC prior to release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. In this case, the petitioner merely asserts that the decision of the BOP is wrong. However, the petitioner's past behavior shows a complete lack of respect for rules and regulations, and an inability to function appropriately in the community, even while under supervision. Whether or not that makes the petitioner a threat to society is a decision

6

best left to the knowledge and expertise of prison officials. In any event, the Court can find no clear constitutional violation in the BOP's decision to deny the petitioner CCC eligibility.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 11) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 29, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE